**SUN OIL COMPANY, Defendant-Appellant,**

v.

**Carrie Craddock FISHER et al., Plaintiff-Appellee.**

**No. 14104.**

United States Court of Appeals Sixth Circuit.

Dec. 17, 1960.

Robert E. Fox, Detroit, Mich., G. Cameron Buchanan, Detroit, Mich., Alexander, Cholette, Buchanan, Perkins & Conk-

**6**

lin, Detroit, Mich., on brief, for appellant.

Phillip C. Kelly, Jackson, Mich., Phillip C. Kelly and George R. Campbell, Phillip C. Kelly, of Kelly, Kelly & Kelly, Jackson, Mich., George R. Campbell of Campbell & Layher, Jackson, Mich., on brief, for appellee.

Before SIMONS, MARTIN and O'SULLIVAN, Circuit Judges.

## PER CURIAM.

Plaintiff's decedent, Deuane Craddock, a young married man, thirty-three years old and in good health, was employed as a driver of a truck which hauled gasoline in and around Detroit, Michigan. Around half past nine o'clock, P.M., on December 20, 1954, in the course of his employment he drove a tractor, semi-trailer and four-wheel trailer into the bulk plant of Sun Oil Company, at a location in Detroit, for the purpose of having the tank trailers filled with gasoline.

On this occasion, a tractor and semi-trailer owned by the defendant company had been driven under the overhanging arms at the side of a rack to be loaded with gasoline. The plaintiff's decedent drove into the premises of appellant and pulled up, stopping about four or five feet to the rear of the aforementioned Sun Oil truck. The trailers on the equipment being used by plaintiff's decedent were some three feet higher than those of the Sun Oil Company. There were twenty-six loading arms on the premises of appellant, constructed in a manner that enabled them to be raised and lowered vertically, as well as allowing movement on a horizontal plane. These loading arms were designed to enable incoming equipment at appellant's plant to be loaded with gasoline and other products sold by appellant.

An employee of appellant loaded the Sun Oil trailer by standing on top of the trailer, lowering the arms into the openings and then raising them out of the openings and leaving them—as the employee stated—about two feet above the top of the Sun Oil trailer. The

equipment of plaintiff's decedent, some three feet higher than that of Sun Oil Company, was immediately behind the Sun Oil truck, waiting to come in under the arms. With the loading arms in the position in which they had been left by the Sun Oil employee as his truck was pulled out, plaintiff's decedent drove slowly forward, stopped under the first arm and climbed out of his cab and onto his equipment between the tractor and the semi-trailer. He pushed aside the first arm, which was about two inches below the top of his semi-trailer; then, reentering his cab, he drove slowly ahead again with one door of his cab open, while he leaned out and looked up toward the second arm.

Neither of the two employees of appellant, who, from places of vantage, were observing the movements of plaintiff's decedent, gave him any warning because, they stated, they thought he would clear the second arm. As he proceeded, the semi-trailer immediately behind the tractor touched the tip of the overhanging arm. At that time, one of appellant's employees shouted "Stop!" The other employee also "hollered"; and plaintiff's decedent stopped within a few inches. Unfortunately, the metal arm had been ruptured by the contact and gasoline spilled down over the tractor and semi-trailer. Plaintiff's decedent jumped from his cab, went to the shutoff valve in the superstructure beside the trailer and tried to shut off the flow of gasoline. While he was doing this, gasoline pouring over his tractor and semi-trailer caused an explosion which resulted in his death.

The jury rendered a verdict of $100,-000 damages. There was evidence in the record that the pecuniary injury to the widow and three children who were dependents of the decedent totaled upwards of $120,000. The average earnings of the plaintiff's decedent were $500 per month.

Plaintiff (appellee) re-married some eight months after the accident and was married at the time of the first trial of this case; but she had divorced her sec-

ond husband before the second trial and, by court decree, had resumed her first married name, Carrie Craddock. The verdict returned by the jury at the first trial was for but $32,500. We think the higher verdict returned at the second trial may have been due to the fact that the appellee had divorced her second husband and was at that time still the widow of the decedent. Moreover, proof of liability was stronger at the second trial than at the first, in view of the testimony given by an eye witness, who did not testify at the first trial.

We think there was substantial evidence to support the foregoing narrative of occurrences and that, upon the facts stated, the jury was justified in finding negligence on the part of appellant, supporting the liability imposed upon it.

Appellant presents forty-three assignments of error. Error is charged to the action of the trial judge in requesting attorneys to approach the bench and, when they had done so, in asking plaintiff's attorney how much he wanted in settlement; and in inquiring, after receiving plaintiff's reply that he wanted $32,500, of defendant's attorney how much he would pay. The trial judge has stated upon the record that the conversation with the attorneys was not sufficiently loud to be heard by the prospective jurors who were seated back of the bar rail in the courtroom. The record is devoid of testimony from any juror that he had overheard such conversation. Indeed, when the trial judge interrogated the jury as to whether or not they had heard the conversation, he received the reply from several that they had not heard. We, therefore, accept the statement of the trial judge that the jury did not hear the conversation complained of.

Appellants charge that the trial judge committed various specified errors: in inviting counsel to make objections to testimony; in asking counsel for defendant why he did not object to certain questions propounded by the plaintiff's attorney; in carrying on, in the presence of the jury, discussions as to the law; in commenting on the testimony of witnesses; in failing to allow the witnesses to testify as to custom at the plant where the accident occurred; and in striking testimony in the absence of valid objections.

Objection is made, too, to the judge's cross-examination of witnesses and his continued colloquy in the presence of the jury as to events of the previous trial; to his constant interruption of the examination and cross-examination of witnesses; to his interrupting arguments to the jury; and to his refusal to charge certain instructions requested by appellant. Other objections are to the judge's overemphasizing negligence in his charge to the jury, and his unnecessary repetition; and to his charging the jury erroneously in some twenty-two specified paragraphs.

Concerning the charge, we find no reversible error therein, although the charge was far from a model one on account of over-emphasis, inept illustrations, and lack of clarity. The zeal of even the most experienced trial judge should not cause him to abandon self-restraint in taking over from trial lawyers the examination of witnesses. It would seem apparent in the instant case that attorneys on both sides were actually handicapped in the presentation of their respective viewpoints and in the development of both the offense and defense. Untimely comments or questions by an over-zealous judge often throws the examining attorney off balance and forecloses the appropriate development of his case.

In the present controversy, the repeated interruptions by the trial judge in the examination of witnesses and his many comments, which should well have been omitted, have caused the court deep concern. But, in view of the obvious liability of appellant on the record and the meritorious character of the cause of action presented by the appellee, which is supported by substantial evidence and well imbedded in law, we think it appropriate to say that the numerous errors complained of by the appellant should not be classified as reversible.

**8**

Accordingly, within the purview of both the statute and the Rules of Civil Procedure [28 U.S.C. § 2111; Rule 61, Federal Rules of Civil Procedure, 28 U.S.C.], the judgment of the United States District Court should be and is, hereby, affirmed.

O'SULLIVAN, Circuit Judge (dissenting).

I think the judgment should be set aside and a new trial granted.